**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACOB GRAHAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO POLICE OFFICERS )<br>)<br>Christopher Dworakoski (star#2703), )<br>)<br>Johnny Santiago (star #11010), )<br>)<br>John Doe 1(star #unknown), )<br>)<br>John Doe 2 (star #unknown), )<br>)<br>)<br>and the CITY OF CHICAGO, )<br>    Defendants. ) | `FILED: OCTOBER 22, 2008`<br>`08CV6063`<br>`JUDGE ASPEN`<br>`MAGISTRATE JUDGE DENLOW`<br>`AEE` |

**Civil Complaint**

**Now comes** the Plaintiff, Jacob Graham, by and through his attorneys, the Law Office of Brendan Shiller, LLC, complaining of the Defendants, Christopher Dworakoski (star#2703), Johnny Santiago (star #11010), John Doe 1(star #unknown), John Doe 2 (star #unknown),and the City of Chicago, and in support thereof, states as follows:

**Introduction**

1. This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiffs of rights secured by the Constitution and laws of the United States. In sum, Defendant Officers stopped Plaintiff

1

Graham without probable cause or any indicia of reasonable suspicion that he was engaged in any sort of criminal activity and unlawfully seized property from him. Plaintiff Graham has been harmed significantly by the unconstitutional acts of Defendant Officers.

**Jurisdiction and Venue**

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C., § 1983, the Judicial Code, 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States. Venue is proper under 28 U.S.C. § 1391 (b). The events purported herein all occurred in the Northern District of Illinois. All parties to the case reside within the Northern District of Illinois.

**The Parties**

3. Plaintiff Jacob Graham is a United States citizen who lives at 1433 W. Touhy Street in Chicago, Illinois.

4. Defendant Officers Christopher Dworakoski (star #2703) and Johnny Santiago (star #11010), are present or former employees of the City of Chicago Police Department. At all times relevant to the complained of incident, Defendants Officers acted under their scope of employment and under the color of law.

5. Defendant City of Chicago is a municipal corporation organized under laws of the State of Illinois. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees,

and for injury occasioned thereby. The City of Chicago was and is the public employer of Defendants Officers.

## Background Facts

6. On October 2, 2007, Jacob Graham spent the day after he finished work, looking for a vehicle, so that he would not have to depend on public transportation to get around with his new baby.

7. Jacob Graham went to several automobile dealerships looking for a reliable car, that he was able to afford with a small down payment.

8. After an unsuccessful search for a vehicle, Jacob headed to his home.

9. Shortly after that, Plaintiff was contacted by a friend and neighbor of his, who knew that he was looking for a vehicle, who told him that he had a car available and to come to his house to see the car.

10. Jacob left his home through the back entrance to the alley to reach his friend's house approximately two to three blocks away.

11. Plaintiff then realized that he had forgotten his cell phone at home and turned to return into the house.

12. Before Plaintiff could reach the gated entrance to his house, he was approached by Defendant Officers Dworakoski and Santiago, who drove up and jumped out of the car and grabbed him and put his hands on the squad car.

13. Defendant Officers Dworakoski and Santiago began searching Plaintiff asking him where he was going.

14. When Defendant Officers searched Jacob Graham they found and removed a total of $786.00 from his pocket.

15. Plaintiff responded that he was going home and pointed to his home, approximately fifteen feet away, showed his identification, believing that would verify what he was saying to them.

16. Defendant Officers then said to him that they believed he sold drugs, which Plaintiff denied and stated that he worked everyday and inquired as to why they thought that.

17. Defendant Officers then stated to Graham that if he did not sell drugs, then where did he get "all of that money" from?

18. Plaintiff told Defendants specifically that he worked for Chicago School Transit and saved the money toward a purchase of a vehicle and offered to go inside his home to get a paycheck stub to verify that.

19. Approximately fifteen (15) minutes later, two additional officers, in an unmarked squad car arrived on the scene and when they saw the money on the other officers had then thrown on top of the squad car, they also wanted to know where he got the money from.

20. Plaintiff repeated the answers he had given to the other officers and Officers John Doe 1 and John Doe 2 repeatedly said that he was lying and began to search the area.

21. Defendants John Doe 1 and John Doe 2 searched the alley thoroughly, including looking inside garbage cans and in various potato chip bags and other debris that was there.

22. By this time, Defendant Officers Santiago and Dworakoski had handcuffed Plaintiff Graham and were putting information into the computer to check his background and for warrants.

23. Defendant Officers then proceeded to repeatedly ask him who sold crack in this area, to which Jacob responded that he did not know.

24. Defendant Officers then asked Plaintiff if he had a gun, to which he responded "no."

25. Defendant Officers then repeatedly asked Plaintiff if he knew who was selling guns on the street in the area, to which he responded that he did not know.

26. Defendant Officers repeatedly told Plaintiff that they wanted him to either bring them drugs or guns, if he didn't want to be arrested.

27. Plaintiff then asked Defendant Officers why they were asking him these questions and again stated that he was not involved in any illegal activities and that he was simply on his way home.

28. Additionally, at this point, Plaintiff asked if they were going to arrest him.

29. Defendant Officers responded that they were not.

30. Plaintiff then asked if he could have his money back and go home, as it had been over an hour that he was detained and questioned by them.

31. Defendant Officer told Plaintiff that he could leave now, but that they were taking his money to the police station and that he would have to meet them there if he wanted to get it back.

32. When Plaintiff arrived at the police station, Defendant Officers told him that a drug dog sniffed his money and made a positive alert.

5

33. Defendant Officers then told Plaintiff that they had to send his money to the Asset Forfeiture Unit and that they would notify him if they were going to file charges against him.

34. Defendant Officers then completed a Property Inventory, Inventory #11083610 and listed Jacob Graham's address incorrectly, although he provided his driver's license to give the correct information, in an apparent effort to permanently deprive him of his property.

35. Plaintiff read the report while still at the police station and brought it to the Defendant Officer's attention that his address was listed incorrectly.

36. Defendants refused to provide a corrected Property Inventory Form, which correctly listed Plaintiffs address, so that he could be contacted regarding his money.

37. When Plaintiff left the police station, it was several hours later

38. Plaintiff had to spend countless hours calling around to various offices and agencies in an effort to correct his address on the Property Inventory form.

39. Eventually, Plaintiff, through his attorney's office was able to correct his information and received his money several months later, in early 2008.

40. No criminal charges were ever instituted against Jacob Graham.

### Count 1—Unlawful Seizure

41. Plaintiff re-alleges and reincorporates all previous paragraphs.

42. As described above, the Defendant Officers, acting under color of law, illegally seized Plaintiff Jacob Graham's property and caused it to be seized and deprived

him of said property without reasonable suspicion or probable cause for the underlying search and seizure, in violation of his Fourth Amendment rights.

43. More specifically, when Defendant Officers conducted the initial illegal search of Jacob Graham, they found the $786 he was going to buy a vehicle with in his pocket.

44. Defendant Officers destroyed stopped Jacob Graham for no reason, searched him without lawful basis, questioned him extensively about general criminal activity in the neighborhood, and when he maintained that he did not know who was selling drugs, and did not know where to go to get guns, Defendants decided to take his money from him and that he could come to the station and pick it up.

45. When Plaintiff arrived at the station, Defendant Officers informed him that a drug dog had sniffed the money and given a positive alert, and that the money would have to be sent to the State's Attorney's Office while they figured out what to charge him with.

46. The misconduct described in this Count, particularly the designation of Plaintiff's money as a narcotics seizure in impounding it, after unlawfully seizing it from the person of Plaintiff was undertaken with malice, willfulness, and reckless indifference to the rights and innocence of Jacob Graham.

47. Plaintiff continues to be damaged both by the difficulties associated with having an infant without a vehicle, and having to hold off on the purchase of a car until the money was returned to him or he was able to save another lump sum of money from his modest salary as a school bus driver.

48. The misconduct described in this Count was caused and participated in by Defendant Officers in the ways more fully described above.

49. WHEREFORE, as a result of Defendant Officers' unconstitutional search and seizure and the City's policy and practice, and the Plaintiff suffered emotional injuries including mental and emotional damage and trauma, embarrassment and humiliation, damage to his reputation, mental distress and anguish, he requests actual, punitive and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

### Count 2—Unlawful Search and Seizure

50. Plaintiff re-alleges and reincorporates all previous paragraphs.

51. As described above, the Defendant Officers, acting under color of law, conducted an unconstitutional search and seizure of Jacob Graham.

52. More specifically, Defendant Officers stopped, searched and excessively detained Jacob Graham without reasonable suspicion or probable cause, a warrant to search him, or any true belief or indicia that he had committed any crime.

53. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights and innocence of Jacob Graham.

54. The misconduct described in this Count was caused and participated in by Defendants in the manner described more fully above.

55. WHEREFORE, as a result of Defendant Officers' unconstitutional search and seizure and the City's policy and practice, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, damage to his reputation, loss of liberty, mental distress and anguish, he requests actual, punitive

and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate

**Count 3--Intentional Infliction of Emotional Distress**

56. Plaintiff re-alleges and reincorporates all previous paragraphs as though fully set forth herein.

57. The acts and conduct of Defendant Officers, under the color of law, as set forth above were extreme and outrageous.

58. Particularly, Defendant Officers actions in stopping Plaintiff as he walked home, unlawfully searching him, all in an effort to either find evidence that he was involved in illegal activities or to lead them to others who were involved in said criminality.

59. When Defendants purposefully misidentified Jacob Graham on the Property Inventory Form and failed to inform him of the proper way to correct it or to correct the form at the police station, prior to Plaintiff leaving, it was a retaliation for his failure to provide them with information on criminal activity, which he did not know.

60. Defendant Officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, emotional distress to Jacob Graham.

61. Defendant Officer's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

62. Said actions and conduct did directly and proximately cause Plaintiff to suffer various emotional and physical problems.

63. WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor, awarding actual, compensatory and punitive damages, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**


Respectfully Submitted,


//S// Brendan Shiller
Brendan Shiller


CIVIL RIGHTS CENTER, LLC
4554 N. Broadway, Suite 325
Chicago, IL 60640
773.704.6396
ARDC: 6279789